# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

THOMAS NAPIER,

    Plaintiff,

v.                                                CIVIL ACTION NO. 3:18-0254

COUNTY COMMISSION OF LINCOLN COUNTY and
ZACH SOWARDS, in his official and individual capacity,

    Defendants.

## MEMORANDUM OPINION AND ORDER

As previously ordered (ECF No. 117), the Court **GRANTS** summary judgment for the following reasons in favor of Defendant Zach Sowards and Defendant County Commission of Lincoln County. ECF Nos. 84, 86.

## I.
## BACKGROUND

On April 2, 2016, Plaintiff Thomas Napier consumed heroin and ingested Xanax. *Dep. of Thomas Napier*, at 41, ECF No. 90-3. As a result, his family took him to the emergency room at St. Mary's Medical Center because he appeared to have overdosed. *Am. Compl.*, ¶¶ 6, 7, ECF No. 69. Medical records describe Plaintiff "as 'disoriented', 'combative', and having an 'altered mental status[,]'" and provide that Plaintiff's ankles and wrists were restrained for safety by order of a physician. *Id*. at ¶¶ 10, 11. Plaintiff also was given "an antipsychotic drug to stabilize his mood." *Id*. at ¶ 12. The treating doctor twice ordered medications to calm Plaintiff, but these medications failed to abate Plaintiff's aggressive behavior. *Dep. of Julie Vaughn*, at 13, ECF No. 88-2. Plaintiff has no clear recall of the events of that day, nor does he have any firsthand

recollection of the events that took place when he was at St. Mary's Medical Center. *Napier Dep.*, at 42–43. Plaintiff's last memory prior to waking up in the hospital was buying heroin in Huntington. *Id.* at 46.

Defendant Zach Sowards, who was employed as a Deputy Sheriff by the Lincoln County Sheriff's Office at the time, was in the Emergency Room at St. Mary's with an unrelated detainee and heard a commotion which drew his attention. *Dep. of Zach Sowards*, at 8, ECF No. 90-2. As a result, Defendant Sowards went to Plaintiff's hospital room, where he and two doctors held Plaintiff down as he attempted to break free from his four-point restraints. *Id*. at 11; *Vaughn Dep.*, at 93. Defendant Sowards and the surrounding medical staff were unable to physically subdue Plaintiff long enough to attach an IV with sedatives, as Plaintiff kept ripping out the needle. *Id.*, at 9. After a prolonged struggle, Defendant Sowards used his taser to deliver a stun long enough for medical staff to administer sedatives. *Id.* at 11-12. As a result, Plaintiff sustained bruises and other injuries. *Ex. 2, Vaughn Dep.*, at 12, ECF No. 90-1.

Plaintiff then filed suit, alleging violations of his Fourth Amendment rights by Defendant Sowards, along with any associated state law claims. *Am. Compl.*, ¶¶ 31–33. Additionally, Plaintiff asserts that Defendant County Commission of Lincoln County ("the Commission") "as a matter of policy, practice, and/or custom," failed to ensure "appropriate policies" were in place in regard to the use of tasers, failed to "adequately train[] and supervise[]" deputy sheriffs, including Defendant Sowards, in the use of tasers, and failed to "conduct proper, adequate, and meaningful investigations into the use of force," specifically the use of electronic control devices such as tasers. *Id.* at ¶¶ 25–27. Plaintiff asserts these failures by the Commission

deprived him "of his right to be free from the use of excessive force[,]" and proximately caused his injuries, in violation of the Fourth Amendment and 42 U.S.C. § 1983. *Id*. at ¶ 31.

## II.
## STANDARD OF REVIEW

A party moving for summary judgment must show there is no genuine issue of any material fact and it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In considering summary judgment, the Court shall not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). However, the Court shall draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). The nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## III.
## DISCUSSION

In his Motion for Summary Judgment, Defendant Sowards claims he is entitled to qualified immunity. *Sowards' Mem. of Law in Supp. of Mot. for Summ. J.*, at 11, ECF No. 85. Qualified immunity "shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Meyers v. Baltimore Cty.*, 713 F.3d 723, 731 (4th Cir. 2013)

(citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). It shields law enforcement officers from "bad guesses in gray areas" and ensures they are liable only "for transgressing bright lines." *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992) (citation omitted).

Courts evaluate claims of excessive force on an "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 399 (1989). It requires "consider[ation of] the facts at the moment that the challenged force was employed." *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015) (citation omitted). Courts focus on the totality of the circumstances of each case, normally looking to the following factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citation omitted). However, as this case involves a medical emergency, rather than a crime and arrest, the *Graham* factors must be tailored to correspond to this situation.

In *Estate of Hill v. Miracle*, 853 F.3d 306 (6th Cir. 2017), the Sixth Circuit adapted the *Graham* factors to test whether an officer used excessive force in a situation involving a medical emergency. In *Miracle*, an officer used a taser on an individual who was disoriented and combative because his blood-sugar level was dangerously low. 853 F.3d at 310-11. After the taser was deployed, the individual calmed down, and emergency medical personnel were able to restore his blood-sugar level to the normal range. *Id*. at 311. The individual then sued the officer for excessive force, amongst other things. *Id*.

In fashioning the *Graham* factors to provide guidance in a medical-emergency context, the Sixth Circuit held, a court should ask:

> (1) Was the person experiencing a medical emergency that rendered him incapable of making a rational decision under circumstances that posed an immediate threat of serious harm to himself or others?
>
> (2) Was some degree of force reasonably necessary to ameliorate the immediate threat?
>
> (3) Was the force used more than reasonably necessary under the circumstances (i.e., was it excessive)?

*Id*. at 314. The Sixth Circuit then reasoned that, "[i]f the answers to the first two questions are "yes," and the answer to the third question is "no," then the officer is entitled to qualified immunity." *Id*.[1] Applying these factors to the case before it, the Sixth Circuit found the officer did not use excessive force by using the taser, as the individual was unable to make a rational decision because of his low-sugar level, he was resisting life-saving intervention, and his actions were putting others and himself in danger. *Id*. at 314-15. Moreover, the Sixth Circuit found that some degree of force was needed to curtail this danger, and the use of the taser was "objectively reasonable" under the circumstances. *Id*. at 315. Therefore, the Sixth Circuit concluded that the officer was entitled to qualified immunity because no reasonable jury could find the degree of force used was excessive. *Id*. at 316.

Although *Miracle* is not binding on this Court, the Court nevertheless finds its adaptation of the *Graham* factors helpful in analyzing the facts of the present case. When it comes to the use of tasers by law enforcement officers, the Fourth Circuit has explained that "[d]eploying

---

[1] The Sixth Circuit also recognized that these questions are non-exhaustive and may not be dispositive in all cases. *Id*. (citation omitted).

a taser is a serious use of force," designed to "'inflict[] a painful and frightening blow.'" *Estate of Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 902 (4th Cir. 2016) (quoting *Orem v. Rephann*, 523 F.3d 442, 448 (4th Cir. 2008)). Nevertheless, there is no blanket prohibition against the use of a taser. It may "be deployed when a police officer is confronted with an exigency that creates an immediate safety risk and that is reasonably likely to be cured by using the taser." *Id.* at 909. The Court finds the instant case fits squarely within such an exigency situation.

As noted by the Sixth Circuit, in an atypical situation of a medical emergency, the first *Graham* factor, the severity of the crime at issue, and the third factor, resisting or attempting to evade arrest, are not in question because it was not an arrest/detention situation. 853 F.3d at 313.[2] Instead, a court should focus on whether Plaintiff's medical condition "rendered him incapable of making a rational decision under circumstances that posed an immediate threat of serious harm to himself or others[.]" *Id.* at 314. Here, it is uncontroverted that Plaintiff was brought to the hospital because of a suspected overdose and he was experiencing a medical emergency. Additionally, the overwhelming evidence indicates that, at the time, Plaintiff was incapable of making a rational decision, he was aggressively resisting being subdued for necessary medical treatment, and he posed an immediate, serious threat to the safety of himself and others.[3] Indeed,

---

[2]The Sixth Circuit further found in *Miracle* there was no direct threat to the officer. *Id.*

[3]"Self-serving statements are not enough to defeat a motion for summary judgment." *Chafin v. State Farm Fire and Cas. Co.,* No. 2:03–0153, 2003 WL 23571723, at * 2 (S.D. W. Va. Nov. 20, 2003) (citations omitted); *see also Cochran v. W. Va. Reg'l Jail & Corr. Facility Auth.*, No. 3:13-10176, 2014 WL 2589705, at *3 (S.D. W. Va. June 10, 2014) (listing cases and explaining it is insufficient to survive summary judgment where a plaintiff has "merely restated the allegations from his/her complaint in affidavit form, instead of offering specific evidence, such as documentation, supporting those allegations where such evidence should have been available" (citations omitted)).

the testimony from those in the room illustrate a violent scene. While medical staff attempted to treat Plaintiff, he was "agitated, uncooperative, and trashing uncontrollably[.]" *Vaughn Dep.*, at 94–95, ECF No. 88-2. He was "extremely aggressive" and "very violent" while "fighting with staff." *Id.* at 12. Medical staff twice administered medication to calm Plaintiff, but to no avail. *Id.* at 13. He was placed in four-point Velcro restraints, but he kept thrashing at medical staff and was freeing himself from the restraints. *Id.* at 14, 16. "It was very loud in the room." *Id*. at 15.

It was this noise that drew the attention of Defendant Sowards. *Sowards Dep.*, at 8. When he looked out of the door from the room he was in, Defendant Sowards was flagged down by medical staff. *Id.* at 8–9, 71. When he arrived at Plaintiff's room, Defendant Sowards saw medical staff attempting to hold Plaintiff down. *Id*. at 9. It appeared Plaintiff was ripping out his IV and spitting. *Id.* at 9–10. Defendant Sowards helped two other doctors try to hold him down, but they were unable to get full control of him, even with four-point restraints. *Vaughn Dep.*, at 93, ECF No. 88-2. Defendant Sowards then began to feel fatigued from the struggle. *Sowards Dep.*, at 11. After verbal commands, Defendant Sowards delivered a single stun to subdue Plaintiff long enough for medical staff to administer a sedative and gain control. *Id.*; *Vaughn Dep.*, at 96, ECF No. 88-2.

Given these facts, any objective observer, as well as the medical staff and Defendant Sowards, would see Plaintiff as a potential threat of harm to himself and those around him. His violent resistance to being subdued for necessary medical treatment, with sustained efforts to bring him under control proving fruitless, further establish that, under the second *Miracle* factor, "some degree of force reasonably [was] necessary to ameliorate the immediate threat[.]"

*Miracle*, 853 F.3d at 314. Moreover, despite being given two doses of mood-stabilizing drugs, four-point restraints, and three individuals attempting to hold Plaintiff down prior to using the taser, it is unrefuted that he remained aggressive, violent, and threatened the safety of himself and others. Although Plaintiff was in the four-point restraints, he was freeing himself from those restraints, he was not compliant or under control, and he continued to fight the staff. *Vaughn Dep.*, at 13-15, ECF No. 113-1; *Vaughn Dep.*, at 10, 17, 93, ECF No. 114-1. Even considering this evidence in the most favorable light to Plaintiff, the Court finds Plaintiff has woefully failed to set forth any evidence upon which a reasonable juror could find Defendant Sowards' single use of a taser was unreasonable under the third *Miracle* factor. Therefore, the Court finds Defendant Sowards did not use excessive force and he is entitled to qualified immunity from this suit.

Turning next to the claims against the Commission, Plaintiff generally asserts that there were no policies or procedures in place regarding the appropriate use of the taser and, although Defendant Sowards attended a training course, Plaintiff contends it was inadequate. *Am. Compl.* at ¶¶21-29. As a result, Plaintiff claims he was subjected to excessive force. *Id*. at ¶31. However, as previously stated, the evidence establishes that Defendant Sowards did not use excessive force. Therefore, as Plaintiff's claim that he was subjected to excessive force does not survive, his claim against the Commission that it is liable for Defendant Sowards use of excessive force also fails, and the Court **GRANTS** summary judgment in its favor. *See generally City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.").

## IV.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS** summary judgment in favor of Defendant Zach Sowards and Defendant County Commission of Lincoln County. ECF Nos. 84, 86.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: May 16, 2019

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE